IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JESSE COBERLEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 06-0743-CV-W-ODS ) |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

**ORDER AND OPINION AFFIRMING FINAL DECISION
OF COMMISSIONER OF SOCIAL SECURITY**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income benefits. For the following reasons, the Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born in March 1958 and has completed the tenth grade. His prior work experience includes jobs as a driver, janitor, supervisor, and electrician. His most recent employment began in 2002 as a school bus driver; he left that job on May 23, 2005. In August 2005 Plaintiff filed his application for disability and supplemental security income benefits, alleging disability commencing the day he left his last job due to fibromyalgia, depression, dyslexia, and pain in his hands, feet, back, knees, hips, shoulders, neck, elbows and wrists. R. at 111.

Plaintiff's regular doctor was Dr. Bill Justus, but there are few relevant records from this physician. R. at 139-42. On December 16, 1998, Dr. Justus noted Plaintiff

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security and therefore should be substituted as the Defendant in this action. Fed. R. Civ. P. 25(d)(1).

was complaining of "chronic hip pain," R. at 140, but the issue of pain was not mentioned again until November 2, 2004, when Dr. Justus noted Plaintiff "cont[inues] to have pain in entire lt. arm and tingling in forearm." R. at 139. Dr. Justus prescribed Darvocet and (according to Plaintiff) referred him to a rheumatologist.

In February 2005, Plaintiff was referred to an orthopedic specialist for disability assessment. Plaintiff weighted nearly 300 pounds and smoked. He complained of pain in his back, swollen joints, diminished range of motion in his toes, discomfort in his heel, and a variety of other aches and pains. "His symptoms in general are aggravated when he is performing prolonged walking or in bed for greater than 4 hours. They are palliated when he is up and with a hot bath. His discomfort level ranges between 4-6/10 on his pain diagram." R. at 207. Examination revealed no significant findings other than a range of motion in Plaintiff's left (non-dominant) shoulder limited to 90 degrees. R. at 208. Plaintiff's motor functions were unremarkable except he was unable to walk on his toes. R. at 209.

On May 5, 2005, Plaintiff saw a rheumatologist (Dr. Joseph Mayus). Plaintiff reported suffering from "chronic pain affecting multiple joints since his early 20s" and a "burning sensation throughout the thighs and gluteal area" over the preceding ten years. R. at 162-63. Over the last three years, he began experiencing pain in the left arm that has spread to his left hand and elbow. Plaintiff also reported he is unable to stand or walk for more than twenty minutes. R. at 163. Dr. Mayus observed Plaintiff's weight had been increasing over the past few years and he used an inhaler to treat "an occasional cough and wheezing." R. at 164. Upon completing a physical examination and viewing x-rays, Dr. Mayus opined Plaintiff suffers from fibromyalgia, lumbar spondylosis, osteoarthritis, and chronic obstructive pulmonary disease ("COPD"). He changed Plaintiff's medication from Darvocet and Ibuprofen to Diclofenac and scheduled Plaintiff for an MRI and other tests. R. at 165.

The MRI was "essentially negative," R. at 154-55, although "minimal narrowing" at the space between L4 and L5 and a slight bulge at C5-6 were noted. R. at 150, 152. The lab results were normal. R. at 151. Dr. Mayus discussed these findings with

Plaintiff on June 15, 2005, and recommended "physical therapy with some neck traction and hot packs," and the medication Dr. Mayus prescribed was continued. R. at 148.

Plaintiff returned on July 19 and reported the physical therapy and medication were "helpful" and there were no side effects from the medication. Dr. Mayus noted no swelling or limitation of motion in Plaintiff's elbow, wrists, hips, knees or ankles. He added a diagnosis of plantar fascitis, increased the dosage of Diclofenac, prescribed Tramadol for pain as needed, and told Plaintiff to return in four months. R. at 146.

Plaintiff filed his application for benefits on August 30, 2005. He returned to Dr. Mayus on November 22, 2005, and reported the Tramadol *caused* headaches and that he was now experiencing chronic pain in practically every part of his body. Despite these dire characterizations, Dr. Mayus' physical exam was essentially the same as it had been on prior occasions. He discontinued the Tramadol and told Plaintiff to return in six months. R. at 189-90. One month later, Dr. Mayus completed a Medical Source Statement - Physical and Medical Source Statement - Mental. In the former document, Dr. Mayus checked boxes indicating Plaintiff could lift or carry five pounds frequently and fifteen pounds occasionally, stand and walk fifteen minutes at a time and two hours in a day, sit for forty-five minutes at a time and for five hours in a day, and would need to lie down twice a day for at least twenty minutes. He also indicated Plaintiff would suffer "sedation" from muscle relaxers. R. at 192-93. In the latter report, Dr. Mayus checked boxes indicating Plaintiff is "markedly limited" in his ability to maintain attention and concentration for extended periods of time and "moderately limited" in his ability to remember and carry out procedures and instructions, maintain regular attendance, adhere to a routine, or adapt to changes. R. at 194-95.

At the hearing, Plaintiff testified he could not return to any of his prior jobs because he could not "sit that long or work that long. I can't focus that tight anymore." R. at 234. He also indicated he could not perform a job requiring him to sit for six hours a day because his hips, back and arm would hurt too much; he needs the freedom to move. R. at 237. When asked if he knew why his arms were bothering him, Plaintiff testified Dr. Mayus told him two of his vertebrae had "grow[n] and shut on my spinal cord" and surgery might provide a temporary solution but it was a dangerous, risky

3

procedure that would not provide permanent relief.  R. at 237.  Plaintiff stated the pain has spread and now is in both hands, and it is difficult for him to hold onto objects such as pens, coffee cups, or other small items.  R. at 239.  The medication makes him sleepy and jittery.  R. at 239-40.  Household tasks are difficult, and he spends three to four hours a day reclining in a chair with his feet up.  R. at 241, 248.  The pain rates as seven or eight without medication, but with medication it is reduced to a five.  R. at 242.  Plaintiff also described pain in his back and hips, which he rated an eight on a scale of one to ten.  R. at 243.  He uses an inhaler three to four times a week to help with his breathing.  R. at 246.  Plaintiff also described experiencing mood swings.  R. at 253.  In response to questioning from the ALJ, Plaintiff testified that went on six or eight trips for fishing and camping the preceding summer (which would have been the Summer of 2005).  R. at 258.

The ALJ solicited testimony from a Vocational Expert ("VE").  First, the VE was asked to assume a person of Plaintiff's age, education and work experience who was limited in the manner described in Dr. Mayus' Medical Source Statement - Physical.  The VE testified such an individual could not perform any work in the national economy.  R. at 266.  Next, the VE was asked to assume the limitations suggested by an agency doctor (Dr. R. Mauldin).  Specifically, Dr. Mauldin noted Plaintiff suffered from fibromyalgia and "some disc bulges and mild central and foraminal stenosis) and opined Plaintiff could, *inter alia*, lift ten pounds frequently and twenty pounds occasionally, stand or walk for six hours a day, and sit for six hours a day.  R. at 80.  The VE testified such an individual could not return to his prior work.  R. at 267-68.  Upon further inquiry, the VE testified such an individual could perform "a wide range of light and sedentary, unskilled work" including a table worker or an extruding operator.  R. at 269-70.

The ALJ discounted Plaintiff's credibility based on inconsistencies in the record, including Plaintiff's testimony that he drives more than his asserted limitations would permit him to.  R. at 15.  This activity (along with, presumably, Plaintiff's camping/fishing trips) are inconsistent with his allegations of disabling pain that precludes him from standing, walking or sitting for extended periods of time.  R. at 15-16.  The ALJ also noted Plaintiff had a "somewhat sporadic work history with multiple employers" and

4

doubted Plaintiff left his last job due to physical problems, noting Plaintiff's last day of work coincided with the last school day of the year. R. at 16. The medical evidence was found to not support the degree of pain Plaintiff suffers, and Dr. Mayus' Medical Source Statements were the product of three examinations and were inconsistent with his contemporaneous treatment notes. R. at 16-17. The ALJ ultimately found Plaintiff's limitations are consistent with those reported by Dr. Mauldin and denied his application for benefits.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Plaintiff first contends the ALJ erred in failing to defer to Dr. Mayus' opinion. Generally speaking, a treating physician's opinion is entitled to deference. This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. E.g., Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). Here, the ALJ noted Dr. Mayus had seen Plaintiff on only three occasions, with each occasion separated by a substantial amount of time. Thus, the Court harbors some doubt as to whether Dr. Mayus is even a treating physician within the scope of the rule.

5

Regardless, even if he is a treating physician, the ALJ identified appropriate facts to justify disregarding Dr. Mayus' opinion. Significantly, Dr. Mayus' Medical Source Statements were quite different from the opinions he expressed in his treating notes. Dr. Mayus did not prescribe particularly strong treatment measures (such as a TENS unit), but rather appeared to adopt Plaintiff's own reports about his limitations. Finally, Plaintiff's complaints to Dr. Mayus suggested far less physical limitations and severity of symptoms than were implied by the Medical Source Statement. For these reasons, the Record supports the ALJ's decision to not defer to R. Mayus' opinion as expressed in the Medical Source Statements.

Plaintiff's second argument is related to his first. Having concluded the ALJ was entitled to reject Dr. Mayus' opinion, the Court rejects Plaintiff's second argument as well. Plaintiff contends the ALJ erred in concluding Plaintiff could perform sedentary or light work, primarily because this is contrary to Dr. Mayus' opinion. Given the ALJ was not obligated to accept Dr. Mayus' opinion, the ALJ's ultimate conclusion is not improper. Plaintiff also specifically points to the Medical Source Statement - Mental Dr. Mayus completed and faults the ALJ for failing to consider Plaintiff's depression. Dr. Mayus is a rheumatologist, not a psychiatrist or mental health professional. There is nothing in his records that justifies his conclusions about Plaintiff's mental abilities and limitations. Finally, the record supports the ALJ's conclusion that Plaintiff's depression was situational at worst, caused by his deteriorating marital situation, and not an impairment that interfered with his ability to perform work-related functions.

Plaintiff next faults the ALJ for rejecting his subjective complaints of pain. The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the
> disability results from a medically determinable physical or
> mental impairment, direct medical evidence of the cause and
> effect relationship between the impairment and the degree of

6

> claimant's subjective complaints need not be produced. The
> adjudicator may not disregard a claimant's subjective
> complaints solely because the objective medical evidence
> does not fully support them.
>
> The absence of an objective medical basis which supports
> the degree of severity of subjective complaints alleged is just
> one factor to be considered in evaluating the credibility of the
> testimony and complaints. The adjudicator must give full
> consideration to all of the evidence presented relating to
> subjective complaints, including the claimant's prior work
> record, and observations by third parties and treating and
> examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's
> subjective complaints solely on the basis of personal
> observations. Subjective complaints may be discounted if
> there are inconsistencies in the evidence as a whole.
>
> 739 F.2d at 1322.

The Court accepts Plaintiff's argument that his subjective complaints of pain cannot be discounted or ignored simply because they are not fully corroborated by objective medical evidence. However, Plaintiff's testimony is also contradicted by evidence in the record, including the nature of the treatment prescribed. Lack of strong pain medication is inconsistent with subjective complaints of disabling pain. See Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994). Plaintiff's activities, including camping and fishing, are inconsistent with the limitations he allegedly suffers under. Plaintiff's work history is a proper factor for the ALJ to consider, and in this case the ALJ was entitled to believe Plaintiff stopped working at his job because the school year was over, not because of physical limitations. At best, the evidence is equivocal, but there is substantial evidence to support the ALJ's decision regarding Plaintiff's credibility and the extent of the pain he experiences.

Finally, Plaintiff contends the ALJ erred in determining his COPD and depression were not severe. The depression was discussed earlier. With respect to Plaintiff's COPD, the record does not suggest any limitations on Plaintiff's functional capacity due to his COPD. None were identified in either the medical records or Plaintiff's testimony. While he may suffer from the condition, and while he may require medication three or four times a week, there is no basis for concluding the condition had any effect on Plaintiff's ability to work. The record supports the ALJ's conclusion these conditions were not severe.

## III.  CONCLUSION

For these reasons, the Commissioner's final decision is affirmed.

IT IS SO ORDERED.

DATE: April 23, 2007

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT